1   GIBSON, DUNN & CRUTCHER LLP
    JOSHUA S. LIPSHUTZ, SBN 242557
2     jlipshutz@gibsondunn.com
    555 Mission Street, Suite 3000
3   San Francisco, CA 94105-0921
    Telephone:    415.393.8200
4   Facsimile:    415.393.8306

5   THEANE EVANGELIS, SBN 243570
      tevangelis@gibsondunn.com
6   MICHAEL HOLECEK, SBN 281034
      mholecek@gibsondunn.com
7   333 South Grand Avenue
    Los Angeles, CA 90071-3197
8   Telephone:    213.229.7000
    Facsimile:    213.229.7520

9

10  Attorneys for Defendant DOORDASH, INC.

11

12

13                      UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15                      SAN FRANCISCO DIVISION

16

17  NOAH GOLDMAN-HULL, an individual, in      CASE NO. 3:19-cv-01513-JSC
    his individual and representative capacity,
18                                            **DEFENDANT DOORDASH, INC.'S**
                         Plaintiff,           **MOTION TO COMPEL ARBITRATION**
19                                            **AND STAY**
             v.
20                                            Hearing Date: August 22, 2019
    DOORDASH, INC.,                           Hearing Time: 9:00 a.m.
21                                            Hearing Location: Courtroom F
                         Defendant.
22                                            Action Filed:  March 22, 2019

23                                            Hon. Jacqueline Scott Corley

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

 **PLEASE TAKE NOTICE THAT** on August 22, 2019, at 9:00 a.m., or as soon as the matter may be heard before the Honorable Jacqueline Scott Corley of the United States District Court for the Northern District of California in the San Francisco Courthouse, Courtroom F, Fifteenth Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant DoorDash, Inc. will and does move this Court for an order compelling arbitration on an individual basis of the claims of Plaintiff Noah Goldman-Hull and staying this action.  This motion is brought on the grounds that Plaintiff's claims against DoorDash are subject to a valid and enforceable arbitration agreement that requires Plaintiff to arbitrate those claims on an individual basis.  *See* 9 U.S.C. §§ 3–4.

 DoorDash's motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declarations of Stanley Tang, Cody Aughney, and Joshua Lipshutz, any other matters of which the Court may take judicial notice, other documents on file in this action, and any oral argument of counsel.


Dated:  May 22, 2019     GIBSON, DUNN & CRUTCHER LLP


          By: */s/ Joshua Lipshutz*
             Joshua Lipshutz

          Attorneys for Defendant DOORDASH, INC.

**CONTENTS**

I.      INTRODUCTION ........................................................................................................... 1

II.     STATEMENT OF RELEVANT FACTS ...................................................................... 2

        A.      DoorDash's Platform Connects Customers, Restaurants, And Delivery
                Contractors ......................................................................................................... 2

        B.      The Parties' Independent Contractor Agreement ................................................ 2

                1.      Plaintiff Signs Up For A DoorDash Account In 2017 And Agrees To
                        The 2017 ICA ......................................................................................... 2

                2.      On The Eve Of Litigation, Plaintiff Signs Up For A Second Account
                        And Agrees To The 2019 ICA ................................................................ 5

        C.      Plaintiff Filed This Lawsuit Against DoorDash Notwithstanding His
                Agreement To Individually Arbitrate Disputes .................................................. 7

III.    PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE HIS CLAIMS ON AN
        INDIVIDUAL BASIS ................................................................................................... 7

        A.      The Arbitration Agreement Is Governed By The Federal Arbitration Act .................. 8

        B.      The Arbitration Agreement Is Valid And Must Be Enforced ................................... 11

                1.      The Delegation Clause In The Arbitration Agreement Is Valid And
                        Enforceable ........................................................................................... 11

                2.      The Gateway Issues Under The FAA Have Been Satisfied ........................... 14

        C.      The Arbitration Class Action Waiver Is Valid And Enforceable ............................. 17

        D.      Plaintiff's PAGA Claim Must Be Stayed .......................................................... 19

IV.     CONCLUSION ........................................................................................................... 21

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alakozai v. Chase Inv. Servs. Corp.*,
2012 WL 748584 (C.D. Cal. Mar. 1, 2012) ..................................................20

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995) .....................................................................................10

*Am. Express Corp. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ..................................................................................1, 18

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .....................................................................1, 9, 17, 18

*Bonner v. Mich. Logistics Inc.*,
250 F. Supp. 3d 388 (D. Ariz. 2017) ...........................................................13

*Bradford v. Flagship Facility Servs. Inc.*,
2017 WL 3130072 (N.D. Cal. July 24, 2017) ...............................................14

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ...............................................................11, 12

*Brown v. DoorDash, Inc.*
(L.A. Super. Ct. No. BC712973) ...................................................................20

*Burks v. Autonomy, Inc.*,
2012 WL 13005954 (S.D. Fla. May 15, 2012) ..............................................10

*Burrola v. U.S. Sec. Assocs., Inc.*,
2019 WL 480575 (S.D. Cal. Feb. 7, 2019) ...................................................19

*Castro v. Macy's, Inc.*,
2017 WL 344978 (N.D. Cal. Jan. 24, 2017) .................................................13

*Circuit City Stores, Inc. v. Ahmed*,
283 F.3d 1198 (9th Cir. 2002)..................................................................12, 14

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) .......................................................................................10

*Correia v. NB Baker Elec., Inc.*,
32 Cal. App. 5th 602 (2019) .........................................................................19

*DIRECTV, Inc. v. Imurgia*,
136 S. Ct. 463 (2015) .....................................................................................9

*Div. of Labor Law Enforc. v. Transpacific Transp.*,
    69 Cal. App. 3d 268 (1977)................................................................................................14

*DoorDash, Inc. v. Marciano*
    (Santa Clara Super. Ct. Mar. 21, 2016)...........................................................................8

*Edwards v. DoorDash, Inc.*,
    2016 WL 7852532 (S.D. Tex. Dec. 8, 2016) ...........................................................8, 17

*Edwards v. DoorDash, Inc.*,
    2017 WL 5514302 (S.D. Tex. Oct. 18, 2017)........................................................7, 8, 17

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002)........................................................................................................16

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) .................................................................1, 9, 15, 17, 19

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh Inc. v. 100 Oak Street*,
    35 Cal. 3d 312 (1983) .....................................................................................................11

*Esparza v. KS Industries, L.P.*,
    13 Cal. App. 5th 1228 (2017) .........................................................................................20

*Farran v. DoorDash, Inc.*
    (O.C. Super. Ct. Mar. 7, 2019)...............................................................1, 7, 8, 17

*Fernando Gutierrez v. Jolt Delivery, LLC*,
    2018 WL 6118581 (C.D. Cal. Aug. 7, 2018).................................................................18

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995)........................................................................................................14

*Gaffers v. Kelly Servs., Inc.*,
    900 F.3d 293 (6th Cir. 2018)..........................................................................................18

*Harm v. Frasher*,
    181 Cal. App. 2d 405 (1960)..........................................................................................13

*Harris v. TAP Worldwide, LLC*,
    248 Cal. App. 4th 373 (2016) .........................................................................................13

*Heidrich v. PennyMac Fin. Servs. Inc.*,
    2018 WL 3388458 (E.D. Cal. July 11, 2018) ................................................................18

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ...............................................................................................11, 19

*Horenstein v. Mortg. Mkt., Inc.*,
    9 F. App'x 618 (9th Cir. 2001) ......................................................................................18

Gibson, Dunn &
Crutcher LLP

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) ...........................................................................................................11

*Khalatian v. Prime Time Shuttle, Inc.*,
  237 Cal. App. 4th 651 (2015) ..........................................................................................10

*Kilgore v. KeyBank, Nat'l Ass'n*,
  718 F.3d 1052 (9th Cir. 2013)....................................................................................12, 14

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019) .....................................................................................................18

*Levin v. Caviar, Inc.*,
  146 F. Supp. 3d 1146 (N.D. Cal. 2015) ...........................................................................15

*Long v. Provide Commerce, Inc.*,
  245 Cal. App. 4th 855 (2016) ..........................................................................................15

*Lowe v. DoorDash, Inc.*
  (L.A. Super. Ct. No. BC715425) ......................................................................................20

*Lyons v. DoorDash, Inc.*
  (C.D. Cal. May 19, 2017).....................................................................................................8

*Magana v. DoorDash, Inc.*,
  343 F. Supp. 3d 891 (N.D. Cal. 2018) ............................................................1, 7, 8, 16, 17, 19

*Manard v. Knology, Inc.*,
  2010 WL 2528320 (M.D. Ga. June 18, 2010) ..................................................................10

*Mandviwala v. Five Star Quality Care, Inc.*,
  723 F. App'x 415 (9th Cir. 2018) ......................................................................................21

*Marciano v. DoorDash, Inc.*,
  S.F. Super. Ct., Dec. 7, 2018.........................................................................................7, 9

*Marciano v. DoorDash, Inc.*
  (S.F. Super. Ct. No. CGC-18-567869)..............................................................................20

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
  89 Cal. App. 4th 1042 (2001) ..........................................................................................15

*Marko v. DoorDash, Inc.*
  (L.A. Super. Ct. May 29, 2018) .....................................................................................1, 17

*Marko v. DoorDash, Inc.*
  (L.A. Super. Ct. No. BC659481) ......................................................................................20

*Mastrobuono v. Shearson Lehman Hutton*,
  514 U.S. 52 (1995)........................................................................................................9, 17

Gibson, Dunn &
Crutcher LLP

DOORDASH, INC.'S MOTION TO COMPEL ARBITRATION          CASE NO. 3:19-CV-01513-JSC

*Metalclad Corp. v. Ventana Envtl. Organizational P'ship*,
   109 Cal. App. 4th 1705 (2003) ...........................................................................14

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017)..................................................................................15

*Miranda v. Anderson Enters., Inc.*,
   241 Cal. App. 4th 196 (2015) .............................................................................19

*Mobil Oil Corp. v. Exxon Corp.*,
   177 Cal. App. 3d 942 (1986)...............................................................................13

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016)..............................................................11, 12, 14

*Montes v. San Joaquin Cmty. Hosp.*,
   2014 WL 334912 (E.D. Cal. Jan. 29, 2014)..........................................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ............................................................................................9, 11

*Posephny v. AMN Healthcare Inc.*,
   2019 WL 452036 (N.D. Cal. Feb. 5, 2019) .........................................................13

*Rent-A-Center, W., Inc. v. Jackson*,
   561 U.S. 63 (2010) ..............................................................................................11

*Rodriguez v. Am. Techs., Inc.*,
   136 Cal. App. 4th 1110 (2006) .............................................................................9

*Rosenthal v. Great W. Fin. Sec. Corp.*,
   14 Cal. 4th 394 (1996) ........................................................................................14

*S. Cal. Dist. Council, Assemblies of God v. Shepherd of the Hills Evangelical Lutheran Church*,
   77 Cal. App. 3d 951 (1978)................................................................................13

*Sakkab v. Luxottica Retail N. Am., Inc.*,
   803 F.3d 425 (9th Cir. 2015)...............................................................................19

*Scott v. Yoho*,
   248 Cal. App. 4th 392 (2016) .............................................................................10

*Silva v. Darden Restaurants, Inc.*,
   2018 WL 3533364 (C.D. Cal. July 20, 2018)......................................................18

*Spikener v. Noble Food Grp., Inc.*,
   2018 WL 4677680 (N.D. Cal. Sept. 27, 2018) ....................................................13

*Stewart v. Preston Pipeline Inc.*,
    134 Cal. App. 4th 1565 (2005) ...................................................................................14

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ...................................................................................................18

*Strotz v. Dean Witter Reynolds, Inc.*,
    223 Cal. App. 3d 208 (1990) ......................................................................................15

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011) .......................................................................15

*Tompkins v. 23andMe, Inc.*,
    2014 WL 2903752 (N.D. Cal. June 25, 2014) ...........................................................15

*United Steelworkers v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960) .............................................................................................14, 16

*Valencia v. Smyth*,
    185 Cal. App. 4th 153 (2010) .......................................................................................9

*Voll v. HCL Techs. Ltd.*,
    2019 WL 144863 (N.D. Cal. Jan. 9, 2019) ................................................................14

*Volt Info. Scis. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989) ...................................................................................................17

*Wagner v. Stratton Oakmont, Inc.*,
    83 F.3d 1046 (9th Cir. 1996) ......................................................................................16

*Whitworth v. SolarCity Corp.*,
    336 F. Supp. 3d 1119 (N.D. Cal. 2018) .....................................................................19

*Wong v. Stoler*,
    237 Cal. App. 4th 1375 (2015) ...................................................................................13

**Statutes**

9 U.S.C. § 2 .........................................................................................................................9

9 U.S.C. § 3 .....................................................................................................................2, 19

9 U.S.C. § 4 .......................................................................................................................11

Cal. Civ. Code § 1550 ...................................................................................................14, 15

Cal. Civ. Code § 1556 .........................................................................................................14

Cal. Civ. Code § 1565 .........................................................................................................15

Cal. Civil Code § 1689(b)(1) ..............................................................................................13

DOORDASH, INC.'S MOTION TO COMPEL ARBITRATION                    CASE NO. 3:19-CV-01513-JSC

**Other Authorities**

1 Witkin, Sum. (11th) of Contracts, § 298 (2018) ...................................................................13

Restatement (2nd) of Contracts, § 205 ...................................................................................13

Gibson, Dunn &
Crutcher LLP

DOORDASH, INC.'S MOTION TO COMPEL ARBITRATION          CASE NO. 3:19-CV-01513-JSC

## I.   INTRODUCTION

Plaintiff Noah Goldman-Hull claims that Defendant DoorDash, Inc. has misclassified all of its California delivery providers as independent contractors, and he purports to bring this lawsuit as a putative class action, a collective action under the Federal Labor Standards Act ("FLSA"), and a representative action under the Private Attorneys General Act ("PAGA").   DoorDash disputes the merits of Plaintiff's claims, but as a threshold matter, Plaintiff cannot litigate these claims in this Court because he expressly agreed to arbitrate any claims against DoorDash on an individual basis.

Plaintiff first created an account with the DoorDash platform in March 2017.   As part of that process, Plaintiff entered into an Arbitration Agreement with DoorDash that expressly waived the right to bring any class, collective, or representative claims.   For well over a year, Plaintiff used the DoorDash platform and did not opt out of the Arbitration Agreement.   In December 2018, Plaintiff (through his counsel) emailed DoorDash and attempted to opt out of the Arbitration Agreement— almost 20 months past the deadline.   Because Plaintiff never validly opted out of the Arbitration Agreement, he is contractually obligated to arbitrate any claims with DoorDash on an individual basis.

The Supreme Court has repeatedly held that arbitration agreements requiring individualized arbitration must be enforced.   *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018); *Am. Express Corp. v. Italian Colors Rest.*, 570 U.S. 228, 238–39 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011).   The parties' Arbitration Agreement here, including its individualized-arbitration requirement, is valid and enforceable under the Federal Arbitration Act ("FAA"), and covers all of the claims Plaintiff alleges in this action.   Every court to examine DoorDash's Independent Contractor Agreement ("ICA") has found that it is governed by the FAA, and courts regularly compel contractors like Plaintiff to individualized arbitration.   Indeed, in October 2018, this Court (the Honorable Phyllis Hamilton) granted DoorDash's motion to compel individualized arbitration based on the same agreement.   *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891 (N.D. Cal. 2018); *see also Farran v. DoorDash, Inc.* (O.C. Super. Ct. Mar. 7, 2019) (Lipshutz Decl. Ex. A) (granting DoorDash's motion to compel arbitration of putative class action); *Marko v. DoorDash, Inc.* (L.A. Super. Ct. May 29, 2018) (Lipshutz Decl. Ex. D) (same).

That same result should follow here.   DoorDash respectfully requests that the Court compel

Plaintiff to arbitrate his claims on an individual basis and stay this action.  *See* 9 U.S.C. § 3 ("If any suit … be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending ... **shall** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ….") (emphasis added).

## II.     STATEMENT OF RELEVANT FACTS

**A.     DoorDash's Platform Connects Customers, Restaurants, And Delivery Contractors**

DoorDash is a technology company headquartered in San Francisco, California that facilitates food delivery through its online platform.  Tang Decl. ¶ 4.  The platform connects customers, a broad array of restaurants, and independent-contractor delivery providers ("contractors").  *Id.*  Customers can access the platform via the DoorDash website or a mobile application ("DoorDash app") on a smartphone.  *Id.*  Contractors typically receive delivery opportunities via the DoorDash app on their smartphone or other mobile device.  *Id.*

**B.     The Parties' Independent Contractor Agreement**

**1.     Plaintiff Signs Up For A DoorDash Account In 2017 And Agrees To The 2017 ICA**

On March 6, 2017, Plaintiff agreed to the 2017 version of DoorDash's Independent Contractor Agreement (the "2017 ICA") when he signed up to create an account with the DoorDash platform. Tang Decl. ¶ 5.  To sign up for an account with the DoorDash platform, Plaintiff had to enter his email address, phone number, and zip code.  *Id*. ¶ 7.  The sign-up screen provided a box that the user must check to proceed, which provides "I agree to the **Independent Contractor Agreement** and have read the **Dasher Privacy Policy**":

Gibson, Dunn & Crutcher LLP



*Id.* ¶ 8 & Ex. C.

The words "Independent Contractor Agreement" and "Dasher Privacy Policy" were highlighted in red text and hyperlinked to the 2017 ICA and Dasher Privacy Policy so that the user could review those documents before indicating his or her agreement to them.  Tang Decl. ¶¶ 8, 10 & Ex. A.  In order to create a DoorDash account, the user had to click the box to indicate his or her agreement to the 2017 ICA.  *Id.* ¶¶ 8–10.  In the event that a user clicked the "Sign Up" button without first checking the box to indicate agreement to the 2017 ICA, the user would be unable to proceed and would receive a message in bold black text and highlighted in a yellow box:  "**You must accept this agreement to continue!**"

*Id.* ¶ 10 & Ex. D.

On March 6, 2017, Plaintiff entered his email, phone number and zip code into the DoorDash sign-up screen, clicked the consent box to "agree to the Independent Contractor Agreement" and then clicked the "Sign Up" button. *Id.* ¶¶ 5–11.  Accordingly, Plaintiff agreed to DoorDash's 2017 ICA, which contained a mutual arbitration provision providing that the parties will arbitrate any disputes, including those relating to the 2017 ICA or their relationship.

The following language appeared in bold, capitalized text in the second paragraph of the first page of the 2017 ICA to put the user on notice of the existence of the Arbitration Agreement:

> **IMPORTANT:  PLEASE REVIEW THIS AGREEMENT CAREFULLY.  IN PARTICULAR,  PLEASE  REVIEW  THE  MUTUAL  ARBITRATION PROVISION IN SECTION XI, AS IT REQUIRES THE PARTIES (UNLESS YOU OPT OUT OF ARBITRATION AS PROVIDED BELOW) TO RESOLVE DISPUTES ON AN INDIVIDUAL BASIS, TO THE FULLEST EXTENT PERMITTED BY LAW, THROUGH FINAL AND BINDING ARBITRATION. BY ACCEPTING THIS AGREEMENT, YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS, INCLUDING SECTION XI, AND HAVE TAKEN THE TIME AND SOUGHT ANY ASSISTANCE NEEDED TO COMPREHEND THE CONSEQUENCES OF ACCEPTING THIS AGREEMENT.**

*Id.* at p. 1.

Section XI of the 2017 ICA is entitled "MUTUAL ARBITRATION PROVISION." *Id.* § XI. Under that section, "CONTRACTOR and DOORDASH mutually agree[d]" to resolve any justiciable disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court, including "any and all claims arising out of or relating to this Agreement[ or] CONTRACTOR's classification as an independent contractor." *Id.* § XI.1.

Although the 2017 ICA has an Arbitration Agreement, DoorDash does not force it on its contractors.  The 2017 ICA stated in bold text that each contractor had a right to opt out of the arbitration provision within "**30 days**" of the effective date of the ICA.  Ex. A § XI.8.  The second paragraph of the 2017 ICA referenced this opt-out right in bold, capitalized text. *Id.* at p. 1.  Similarly, Section XI.8 of the 2017 ICA explained this opt-out right in bold font:

> **<u>CONTRACTOR's Right to Opt Out of Arbitration Provision</u>.  Arbitration is not a mandatory condition of CONTRACTOR's contractual relationship with DOORDASH, and therefore CONTRACTOR may submit a statement notifying DOORDASH that CONTRACTOR wishes to opt out and not be subject to this MUTUAL ARBITRATION PROVISION.**  In order to opt out, CONTRACTOR must

notify DOORDASH of CONTRACTOR's intention to opt out by sending an email to dasheroptout@doordash.com stating CONTRACTOR's intention to opt out.  In order to be effective, CONTRACTOR's opt out notice must be provided within 30 days of the effective date of this Agreement. If CONTRACTOR opts out as provided in this paragraph, CONTRACTOR will not be subject to any adverse action from DOORDASH as a consequence of that decision and he/she may pursue available legal remedies without regard to this Mutual Arbitration Provision.  If CONTRACTOR does not opt out within 30 days of the effective date of this Agreement, CONTRACTOR and DOORDASH shall be deemed to have agreed to this Mutual Arbitration Provision.  CONTRACTOR has the right to consult with counsel of CONTRACTOR's choice concerning this Mutual Arbitration Provision (or any other provision of this Agreement.[)]

Ex. A, § XI.8 (emphasis in original).[1]

For over a year and a half, Plaintiff used the DoorDash platform and did not attempt to opt out of the 2017 ICA.  *See* Tang Decl. ¶¶ 12–13.  Plaintiff completed approximately 180 deliveries and earned approximately $1,944.  *Id.* ¶ 14.  Then, on December 13, 2018, Plaintiff's counsel sent an email to DoorDash expressing Plaintiff's desire to opt out of the Arbitration Agreement.  Tang Decl. ¶ 12, Ex. D.  But the attempted opt-out was ineffective under the terms of the 2017 ICA because it was not sent within 30 days of Plaintiff accepting the 2017 ICA.  *See id.* Ex. A, § XI.8.

### 2.  On The Eve Of Litigation, Plaintiff Signs Up For A Second Account And Agrees To The 2019 ICA

On March 15, 2019, exactly *one week* before filing this lawsuit, Plaintiff signed up for a *second* DoorDash account using a different email address.  Tang Decl. ¶ 15.  When Plaintiff created this account, he agreed to an updated version of the ICA (the "2019 ICA").  *Id.* ¶ 16.  By agreeing to the 2019 ICA, Plaintiff represented that he "desire[d] to enter into this Agreement for the right to receive delivery opportunities made available through DOORDASH's platform."  Tang Decl. Ex. D, at p. 1.  He "agree[d] that he … [would] not manipulate or abuse the referral programs or Dasher promotions

---

[1]  The Arbitration Agreement also contains numerous consumer-friendly provisions designed to make the arbitration cost-effective, efficient, and fair for both parties.  For example, the Arbitration Agreement invokes the well-established American Arbitration Association ("AAA") rules for the proceeding and provides a hyperlink to those rules.  Tang Decl. Ex. A, §§ XI.5, XI.7.  The Arbitration Agreement also allows Plaintiff to demand that the arbitration take place within 45 miles of his residence, DoorDash agrees to "pay any costs uniquely associated with arbitration, such as payment of the costs of AAA and the Arbitrator," discovery is permitted, and "the Arbitrator may award all remedies to which a party is entitled under applicable law and which would otherwise be available in a court of law …."  *Id.* § XI.5.

by … creating multiple Dasher … accounts," and he agreed that such "manipulation or abuse constitutes a material breach of this Agreement and may lead to the deactivation of his … account." *Id.* § V.5. Despite creating this second account, Plaintiff did not submit the required background check, and his second account was never activated. *Id.* ¶ 17.

Nonetheless, the 2019 ICA that Plaintiff agreed to includes a similar arbitration agreement as the 2017 ICA. Like the 2017 ICA, the 2019 ICA includes a "MUTUAL ARBITRATION PROVISION" in which Plaintiff and DoorDash mutually agreed to submit "any and all claims arising out of or relating to … [Plaintiff's] classification as an independent contractor" to arbitration. *Id.* Ex. D at § XI.1.

The 2019 ICA also contains an Arbitration Class Action Waiver that provides that both Plaintiff and DoorDash "waive their right to have any dispute or claim brought, heard or arbitrated as, or to participate in, a class action, collective action and/or representative action—including but not limited to actions brought pursuant to the Private Attorney General Act ('PAGA')." *Id.* § XI.3.[2] The 2019 ICA's Arbitration Agreement contains a delegation clause providing that the arbitrator will decide all issues of arbitrability, except for the validity of the Arbitration Class Action Waiver. *Id.*

The 2019 ICA states in bold text that each contractor has a right to opt out of the arbitration provision within 30 days of the effective date of the ICA. *Id.* § XI.8. The 2019 ICA permits a contractor to opt-out of the Arbitration Agreement by "sending a letter, by First Class Mail, to DoorDash,… signed by the contractor himself/herself … within 30 days." *Id.*

Plaintiff agreed to the 2019 ICA on March 15, 2019 by clicking "Sign Up" and manifesting his agreement to the 2019 ICA. *Id.* ¶¶ 16, 18, Ex. D.

---

[2]  The 2019 ICA also contains a separate, stand-alone Litigation Class Action Waiver, which is not part of the Arbitration Agreement. The Litigation Class Action Waiver states that "any proceeding to litigate in court … will be conducted solely on an individual basis, and CONTRACTOR agrees not to seek to have any controversy, claim or dispute heard as a class action, a representative action, a collective action, a private attorney-general action, or in any proceeding in which CONTRACTOR acts or proposes to act in a representative capacity ('Litigation Class Action Waiver')." Tang Decl. Ex. A, § XII. In the event that the Court finds that any part of Plaintiff's claims must be litigated under the 2019 ICA (it should not), DoorDash preserves all arguments, including that the Litigation Class Action Waiver is valid and enforceable and prevents Plaintiff from litigating in court on a class, collective, or representative basis.

**C.      Plaintiff Filed This Lawsuit Against DoorDash Notwithstanding His Agreement To Individually Arbitrate Disputes**

Despite agreeing to arbitrate his disputes with DoorDash, Plaintiff filed this lawsuit against DoorDash on March 22, 2019.  Plaintiff's complaint alleges that he and other contractors who completed deliveries in California using the DoorDash platform are misclassified as independent contractors, and that DoorDash is liable for: (1) violation of the FLSA; (2) failure to reimburse business expenses; (3) willful misclassification; (4) failure to pay minimum wage; (5) failure to provide wage statements; (6) unlawful and/or unfair business practices; and (7) civil penalties under PAGA.

Plaintiff seeks to represent an FLSA "class of putative Collective Action Members … defined as: [a]ll current and former Dashers who have worked for [DoorDash] nationwide from any time starting three years before a collective action may be conditionally certified in the case until the date the case resolves." Compl. ¶¶ 2, 59.  He also seeks to represent a putative Rule 23 class of "[a]ll current and former Dashers who worked for [DoorDash] in the State of California from any time starting four years prior to the date of the filing of the initial Complaint until the date the case resolves." *Id.* ¶¶ 3, 74.  And he seeks to represent the State of California under PAGA. *Id.* ¶¶ 4, 61.

### III.      PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE HIS CLAIMS ON AN INDIVIDUAL BASIS

The FAA controls the parties' arbitration agreement, and imposes a heavy burden on Plaintiff to avoid arbitration.  Here, the parties' agreement delegates *to the arbitrator* the two primary "gateway" issues—whether there is a valid arbitration agreement and whether it covers this dispute.  In any event, as described below, both gateway issues are easily satisfied here.  The only gateway issue reserved for the Court is whether Plaintiff's Arbitration Class Action Waiver is enforceable.  As explained below, the Supreme Court's recent decision in *Epic Systems* confirms that the Arbitration Class Action Waiver is enforceable.

Every time DoorDash has moved to compel arbitration in accord with its Arbitration Agreement, the court has compelled arbitration or stayed proceedings.  *See Magana*, 343 F. Supp. 3d at 899–900 (compelling arbitration); *Farran* (Lipshutz Decl. Ex. A) (compelling arbitration); *Marciano v. DoorDash, Inc.* (S.F. Super. Ct., Dec. 7, 2018) (Lipshutz Decl. Ex. C) (staying proceedings); *Marko* (Lipshutz Decl. Ex. D) (compelling arbitration); *Edwards v. DoorDash, Inc.*, 2017 WL 5514302, at

Gibson, Dunn & Crutcher LLP

*13 (S.D. Tex. Oct. 18, 2017), *report and recommendation adopted*, 2017 WL 5514707 (S.D. Tex. Nov. 16, 2017) (compelling arbitration); *Edwards v. DoorDash, Inc.*, 2016 WL 7852532, at *14 (S.D. Tex. Dec. 8, 2016,), *report and recommendation adopted*, 2017 WL 244862 (S.D. Tex. Jan. 19, 2017) (compelling arbitration after severing two provisions which are not in the 2017 or 2019 ICAs), *aff'd*, 888 F.3d 738 (5th Cir. 2018); *DoorDash, Inc. v. Marciano* (Santa Clara Super. Ct. Mar. 21, 2016) (Lipshutz Decl. Ex. E) (compelling arbitration of complaint filed before California Division of Labor Standards Enforcement); *Lyons v. DoorDash, Inc* (C.D. Cal. May 19, 2017) (Lipshutz Decl. Ex. F). Indeed, in *Lyons*, the plaintiff stipulated to arbitration upon reviewing DoorDash's motion to compel. *Id.*  Plaintiff can offer the Court no reason to adopt an aberrant result here.

Magana* and *Farran* are particularly on-point because (as here) they are putative class actions brought against DoorDash alleging violations of the same California Labor Code provisions.   In *Magana*, the plaintiff tried to evade arbitration by arguing that: (i) he fell within the FAA's "transportation worker" exception; and (ii) he sought "public injunctive relief" that purportedly could not be arbitrated.  After thoroughly examining the law and DoorDash's ICA, Judge Hamilton rejected both arguments.   343 F. Supp. 3d at 899.   Because the Arbitration Agreement was valid and enforceable, Judge Hamilton compelled Magana to arbitrate his claims on an individual basis and stayed the case.  *Id.* at 904.

The plaintiff in the second putative class action, *Farran*, was also compelled to arbitration on an individual basis.  The California Superior Court concluded that DoorDash's Arbitration Agreement and Class Action Waiver were enforceable and required the plaintiff to individually arbitrate his Labor Code claims against DoorDash.  Lipshutz Decl. Ex. A at 1–2.  Like *Magana*, the *Farran* court stayed the action pending the outcome of the individual arbitration.  *Id.*

This case involves substantially similar parties, factual allegations, legal theories, and contractual arbitration provisions as *Magana* and *Farran*.  As explained below, this Court should compel Plaintiff to arbitration on an individual basis and stay the case.

A.     The Arbitration Agreement Is Governed By The Federal Arbitration Act

Courts have unanimously concluded that the FAA governs DoorDash's ICA.  *Magana*, 343 F. Supp. 3d at 899; *Farran* (Lipshutz Decl. Ex. A), at 1; *Marko* (Lipshutz Decl. Ex. D), at 2; *Edwards*,

1  2017 WL 5514302, at *13; *Marciano* (Lipshutz Decl. Ex. E), at 4.

2      All of these cases correctly applied the FAA, which declares a "liberal federal policy" favoring

3  the enforcement of arbitration agreements.  *Concepcion*, 563 U.S. at 346; *Epic Sys.*, 138 S. Ct. at 1621.

4  Section 2 of the FAA provides: "A written provision in any ... contract evidencing a transaction

5  involving commerce to settle by arbitration a controversy thereafter arising ... *shall be valid,*

6  *irrevocable, and enforceable*, save upon such grounds as exist at law or in equity for the revocation of

7  any contract."  9 U.S.C. § 2 (emphasis added).  If an agreement is governed by the FAA, courts must

8  effectuate Congress' intent "to move the parties to an arbitrable dispute out of court and into arbitration

9  as quickly and easily as possible."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S.

10  1, 22 (1983).

11      Here, the Arbitration Agreement is indisputably governed by the FAA for two independent

12  reasons.  ***First***, the Agreement expressly states that it is governed by the FAA (Tang Decl. Ex. A,

13  § XI.1), which is sufficient to bring it within the purview of the FAA.  *See Mastrobuono v. Shearson*

14  *Lehman Hutton*, 514 U.S. 52, 63–64 (1995); *DIRECTV, Inc. v. Imurgia*, 136 S. Ct. 463, 468–71 (2015).

15  The FAA governs contracts—even absent evidence of an effect on interstate commerce—if the parties

16  so agree.  *See Montes v. San Joaquin Cmty. Hosp.*, 2014 WL 334912, at *5 (E.D. Cal. Jan. 29, 2014)

17  (courts honor parties' contractual agreement to be bound by the FAA) (citing *Valencia v. Smyth*, 185

18  Cal. App. 4th 153, 179 (2010) (where no party alleged that the contract affected interstate commerce,

19  "the language of the Agreement … dictates the applicable law")); *Rodriguez v. Am. Techs., Inc.*, 136

20  Cal. App. 4th 1110, 1116, 1121 (2006).

21      The ICA contains two choice-of-law provisions that invoke the FAA.  Tang Decl. Ex. A, § XI.1

22  ("This arbitration agreement is governed by the Federal Arbitration Act (9 U.S.C. §§ 1–16)"); *id.*

23  § XIV.3 ("[T]he Mutual Arbitration Provision … is governed by the Federal Arbitration Act.").  Courts

24  must "enforce arbitration agreements according to their terms."  *Epic Sys.*, 138 S. Ct. at 1619; *see also*

25  *Mastrobuono*, 514 U.S. at 62–64 (construing choice-of-law provision in favor of arbitration).  And the

26  terms of the ICA are clear:  "The parties expressly agree that this [ICA] shall be governed by the FAA."

27  Tang Decl. Ex. A, § XI.1.

28

***Second***, the FAA applies because the Agreement "affect[s] commerce."  *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74, 281 (1995) (FAA's requirement that an agreement "involv[e] commerce" is "broad and is indeed the functional equivalent of 'affecting'" commerce, "even if the parties did not contemplate an interstate commerce connection").  The phrase "involving commerce" is "functional[ly] equivalent" to the phrase "affecting commerce," which "normally signals Congress' intent to exercise its Commerce Clause powers to the full."  *Id.* at 273.  This is so "even if the parties did not contemplate an interstate commerce connection."  *Id.* at 281; *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("[T]he FAA encompasses a wider range of transactions than those actually 'in commerce'—that is, 'within the flow of interstate commerce'").  For the FAA to apply, a party need not "show[] any specific effect upon interstate commerce," as long as "in the aggregate the economic activity in question would represent a general practice ... subject to federal control."  *Alafabco*, 539 U.S. at 56–57.

Courts regularly apply the FAA where, as here, a contract involves transactions and communications over email and the Internet.  *See Manard v. Knology, Inc.*, 2010 WL 2528320, at *3 (M.D. Ga. June 18, 2010) (FAA governed contract for Internet services); *Burks v. Autonomy, Inc.*, 2012 WL 13005954, at *3 (S.D. Fla. May 15, 2012) (FAA governed contract with "software company dealing in Internet content management solutions with clients across the United States"); *see also Scott v. Yoho*, 248 Cal. App. 4th 392, 402 (2016) (FAA governed contract when doctor engaged in Internet advertising and communication with out-of-state patients by telephone, mail and email); *Khalatian v. Prime Time Shuttle, Inc.*, 237 Cal. App. 4th 651, 658 (2015) (FAA governed contract of shuttle driver who drove only in California where defendant's customers made reservations and paid for rides over Internet).

DoorDash "is a technology startup … that facilitates food delivery through its online platform," and its "platform connects customers, a broad array of restaurants, and [contractors].  Customers can access the platform via the DoorDash website or a mobile application on a smartphone.  Contractors typically receive delivery opportunities via the DoorDash app on their smartphone or other mobile device."  Tang Decl. ¶ 4; *see also* Aughney Decl. ¶¶ 4–8 (explaining interstate nature of DoorDash's business).  Further, in the 2019 ICA, Plaintiff expressly "acknowledge[d]" that DoorDash's "business

… is to provide an online marketplace connection using web-based technology that connects contractors, restaurants and/or other businesses, and consumers." Tang Decl. Ex. A § III.3. Indeed, Plaintiff also agreed to "immediately notify" DoorDash if he disagreed with this characterization of DoorDash's business. *Id.* § III.7. He did not do so.

## B.     The Arbitration Agreement Is Valid And Must Be Enforced

Consistent with the principle that arbitration is a matter of contract, the FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of a party to the agreement. 9 U.S.C. § 4. In determining whether to compel arbitration under the FAA, courts generally look at two "gateway" issues: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002). If there is any doubt as to the proper interpretation of the agreement on any issue related to arbitrability, the FAA "establishes that … [it] should be resolved ***in favor of arbitration***, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense of arbitrability." *Moses H. Cone*, 460 U.S. at 24–25 (emphasis added); *see also Ericksen, Arbuthnot, McCarthy, Kearney & Walsh Inc. v. 100 Oak Street*, 35 Cal. 3d 312, 320 (1983) (citing *Moses H. Cone* for same).

### 1.     The Delegation Clause In The Arbitration Agreement Is Valid And Enforceable

Before reaching these gateway issues, however, a court must first examine the agreement to determine whether the parties agreed to commit threshold questions of arbitrability to the arbitrator. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the court to enforce …."). If the parties have "clearly and unmistakably" agreed to delegate questions of arbitrability to the arbitrator, then the arbitrator must decide the threshold issues. *Howsam*, 537 U.S. at 83; *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (courts may not override delegation clauses); *see also Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016) (holding that clear and unmistakable delegation clauses must be enforced under binding Supreme Court precedent); *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015) (clearly and unmistakably delegated arbitrability issues to arbitrator).

Gibson, Dunn &
Crutcher LLP

Here, the Arbitration Agreement clearly and unmistakably provides that, except for questions regarding the enforceability of the Arbitration Class Action Waiver, "[a]ll other disputes with respect to whether this Mutual Arbitration Provision is unenforceable, unconscionable, applicable, valid, void or voidable ***shall be determined exclusively by an arbitrator***, and not by any court." Tang Decl. Ex. A, § XI.3 (emphasis added). Moreover, the Arbitration Agreement expressly incorporates the AAA Commercial Arbitration Rules ("AAA Rules"). *Id.* at XI.5. Rule 7 of the AAA Rules provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim[.]" Lipshutz Decl. Ex. B at R.7(a). The express incorporation of the AAA Rules therefore constitutes further clear and unmistakable evidence of the parties' intent to arbitrate the threshold issue of arbitrability. *See Brennan*, 796 F.3d at 1130–31 ("[I]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agree to arbitrate arbitrability"). The Court should enforce this clear and unmistakable agreement and decide only the issue of the enforceability of the Arbitration Class Action Waiver. *See Mohamed*, 848 F.3d at 1209 (enforcing delegation clause that carved out challenges to class, collective and representative waivers).

While it is generally Plaintiff's burden to prove that an agreement is unconscionable, DoorDash notes that courts have repeatedly held that if an arbitration agreement provides an opportunity to opt out, it is not adhesive and there can be no procedural unconscionability. *See Mohamed*, 848 F.3d at 1211; *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002); *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (en banc). Courts have therefore upheld delegation clauses found in voluntary arbitration agreements on the ground that they are not unconscionable. *See Mohamed*, 848 F.3d at 1211 (upholding delegation clause found in arbitration agreement that provided right to opt out).

Here, DoorDash conspicuously notified Plaintiff of his right to opt out of the Arbitration Agreement on the very first page of the 2017 ICA, as well as in a standalone section in the Arbitration Agreement with the underlined and bolded title, "**CONTRACTOR's Right to Opt Out of Arbitration Provision**." Tang Decl. Ex. A, § XI.8. The Arbitration Agreement states that: (1) arbitration is "not a mandatory condition of [Plaintiff's] contractual relationship with

DOORDASH"; and (2) Plaintiff would "not be subject to any adverse action from DOORDASH" if he opted out.  *Id.*  Plaintiff had 30 days to notify DoorDash of his desire to opt out, but failed to do so.  Tang Decl. ¶ 13.  His purported opt-out email 20 months later was ineffective.  *See Posephny v. AMN Healthcare Inc.*, 2019 WL 452036, at *7 (N.D. Cal. Feb. 5, 2019) (compelling arbitration when plaintiffs' attempted opt-out was untimely).

Nor did Plaintiff opt out of the Arbitration Agreement when he tried to create a *second* DoorDash account a week before filing this lawsuit.  As an initial matter, Plaintiff's attempt to create a second account for the purpose of litigation is invalid.  Plaintiff represented that he "desire[d] to enter into this [2019 ICA] for the right to receive delivery opportunities made available through DOORDASH's platform."  Tang Decl. Ex. D, at p. 1.  But that was false—Plaintiff already had the right to receive delivery opportunities through an account on the DoorDash platform he had used for well over a year.  *See* Tang Decl. ¶ 5.  It appears that Plaintiff may have signed up for a second account by using a different email address one week before filing this lawsuit for the purpose of litigation—if so, the Court should not condone such fraudulent conduct.[3]

In any event, even if the 2019 ICA governs, its opt-out provision requires contractors to *mail* a *signed* opt-out notice to DoorDash within 30 days, and Plaintiff never did so.  *Supra* p. 6.  Courts regularly enforce mail-only opt-out procedures like the one contained in DoorDash's 2019 ICA.  *See, e.g.*, *Spikener v. Noble Food Grp., Inc.*, 2018 WL 4677680, at *2 (N.D. Cal. Sept. 27, 2018) (compelling arbitration when plaintiff failed to mail a signed letter requesting to opt out within 30 days); *Bonner v. Mich. Logistics Inc.*, 250 F. Supp. 3d 388, 399–400 (D. Ariz. 2017) (same); *Castro*

---

[3] *See Wong v. Stoler*, 237 Cal. App. 4th 1375, 1384 (2015); *see also* Cal. Civil Code § 1689(b)(1) (permitting rescission of contracts entered into by fraud).  Moreover, every contract is governed by the implied covenant of good faith and fair dealing.  *Harm v. Frasher*, 181 Cal. App. 2d 405, 417 (1960); *Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 388 (2016) (covenant applies to contractual arbitration provisions); *Mobil Oil Corp. v. Exxon Corp.*, 177 Cal. App. 3d 942, 949 (1986) (reversing judgment on the pleadings and allowing party to submit evidence of breach of covenant based on alleged attempt to alter contractual arbitration obligations).  Violating the covenant of good faith and fair dealing by entering a contract while concealing "knowledge of what was going on" provides the other party with a "clear basis for rescinding its contract."  *S. Cal. Dist. Council, Assemblies of God v. Shepherd of the Hills Evangelical Lutheran Church*, 77 Cal. App. 3d 951, 956 (1978).  Similarly, "evasion of the spirit of the bargain," or "dishonest conduct," such as creating a dummy account for the purpose of evading arbitration to which Plaintiff agreed, is not permitted.  Restatement (2nd) of Contracts, § 205; 1 Witkin, Sum. (11th) of Contracts, § 298 (2018) (fraud in the inducement renders contract voidable).

Gibson, Dunn &
Crutcher LLP

*v. Macy's, Inc.*, 2017 WL 344978, at *2–3 (N.D. Cal. Jan. 24, 2017) (same); *see also Voll v. HCL Techs. Ltd.*, 2019 WL 144863, at *2 (N.D. Cal. Jan. 9, 2019) (compelling arbitration when plaintiff failed to request and complete the required opt-out form); *Bradford v. Flagship Facility Servs. Inc.*, 2017 WL 3130072, at *6 (N.D. Cal. July 24, 2017) (compelling arbitration when plaintiff failed to return required opt-out form to human resources department within 30 days).  This meaningful opportunity to opt out renders the agreement voluntary and precludes any finding of procedural unconscionability.  *See Mohamed*, 848 F.3d at 1211; *Circuit City Stores*, 283 F.3d at 1199; *Kilgore*, 718 F.3d at 1059.  Plaintiff should be required to arbitrate the threshold issue of arbitrability.

### 2.      The Gateway Issues Under The FAA Have Been Satisfied

Even if the Court were to find that it, and not an arbitrator, should determine arbitrability despite the delegation clause (it should not), the Court should compel Plaintiff's claims to individual arbitration because both of the "gateway" issues under the FAA have been met here.

### a.      A Valid Agreement To Arbitrate Exists

"[A]rbitration is a matter of contract ...."  *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).  Ordinary state law principles governing the formation of contracts are therefore used to determine whether the parties agreed to arbitrate.  *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Metalclad Corp. v. Ventana Envtl. Organizational P'ship*, 109 Cal. App. 4th 1705, 1712 (2003).  The moving party's burden is light in this regard.  DoorDash need only show, by a preponderance of the evidence, that an agreement to arbitrate exists.  *See Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996).

Under California law, a valid contract exists when (1) the parties are capable of contracting, and there is (2) a lawful object, (3) mutual consent, and (4) sufficient cause or consideration.  Cal. Civ. Code § 1550; *see also Div. of Labor Law Enforc. v. Transpacific Transp.*, 69 Cal. App. 3d 268, 275 (1977).  The Arbitration Agreement contained in the ICA meets all of these requirements.  First, there is no dispute that the parties are capable of contracting.  *See* Cal. Civ. Code § 1556 ("All persons are capable of contracting, except minors, persons of unsound mind, and persons deprived of civil rights.").  Second, there is also no dispute that the Arbitration Agreement had a lawful purpose, *i.e.*, the prompt and efficient resolution of disputes in arbitration.  *See Stewart v. Preston Pipeline Inc.*, 134

Cal. App. 4th 1565, 1586 (2005) (finding arbitration provision had lawful purpose of resolving litigation); *see also Epic Sys.*, 138 S. Ct. at 1621 (by enacting the FAA, "Congress directed courts to ... treat arbitration agreements as 'valid, irrevocable, and enforceable'").

Third, there is mutual consent. Plaintiff affirmatively acknowledged his intent—after ample opportunity for review—to be bound by the terms of the ICA, including the conspicuous Arbitration Agreement contained therein. *See Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049–50 (2001) ("Every contract requires mutual assent or consent (Cal. Civ. Code §§ 1550, 1565), and ordinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms."). Plaintiff's manifestation of his acceptance to the ICA by clicking "Sign Up" confirmed his agreement. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75–80 (2d Cir. 2017) (vacating order denying motions to compel arbitration after holding that availability of a contract "only by hyperlink does not preclude a determination of reasonable notice" and that the plaintiff "unambiguously manifested his assent to [the contract] as a matter of California law").[4] Moreover, in addition to Plaintiff's affirmative assent, DoorDash provided Plaintiff ample opportunity to review the ICA, and 30 days after accepting the ICA to opt out of the Arbitration Agreement. Tang Decl. Ex. A, § XI.8. Plaintiff did not opt out of the Arbitration Agreement under the terms of the ICA (*id.* ¶ 13), further evidencing his consent to be bound by its terms.

Finally, the Arbitration Agreement is supported by valid consideration: the parties' mutual promises to arbitrate disputes. *See Strotz v. Dean Witter Reynolds, Inc.*, 223 Cal. App. 3d 208, 216 (1990), *overruled on other grounds by Rosenthal v. Great W. Fin. Secs. Corp.*, 14 Cal. 4th 394 (1996) ("Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial

---

[4] *See also*, *e.g.*, *Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1157 (N.D. Cal. 2015) (compelling arbitration and finding contract was formed when plaintiff clicked on a button to indicate assent to an agreement whose terms were accessible by hyperlink); *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *8 (N.D. Cal. June 25, 2014) (holding that contract had been formed when plaintiff "clicked a box or button that appeared near a hyperlink to the [contract] to indicate acceptance of the [contract]"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 910–12 (N.D. Cal. 2011) (compelling arbitration and finding video game user bound by Zynga's terms of service because she clicked the "accept" button immediately above a hyperlink which contained its terms); *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 862–63 (2016) (distinguishing a "browsewrap" agreement seeking to bind plaintiff to Terms of Use agreement merely by visiting the website, from an enforceable "clickwrap" agreement which requires an affirmative act of consent).

determination and to arbitrate their disputes provide consideration for each other.").  All of the elements for the valid formation of an agreement to arbitrate exist here.

### b. Plaintiff's Claims Are Covered By The Arbitration Agreement

"[A]bsent some ambiguity in the agreement ... it is the language of the contract that defines the scope of disputes subject to arbitration."  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). Courts must "interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration."  *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996); *see also United Steelworkers*, 363 U.S. at 582–83 (courts must conclude disputes are covered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.").

Here, there is no ambiguity in the agreement.  Rather, the language of the Arbitration Agreement makes clear that Plaintiff's claims are subject to arbitration.  Specifically, Plaintiff agreed that the Arbitration Agreement would apply to:

> any and all claims arising out of or relating to this Agreement, ***CONTRACTOR's classification as an independent contractor***, CONTRACTOR's provision of Contracted Services to consumers, ***the payments received by CONTRACTOR for providing services to consumers***, the termination of this Agreement, and all other aspects of CONTRACTOR's relationship with DOORDASH, past, present or future, whether arising under federal, state or local statutory and/or common law, including without limitation . . . claims arising under or related to . . . ***[the] Fair Labor Standards Act (or its state or local equivalents)***, state and local wage and hour laws, state and local statutes or regulations addressing the same or similar subject matters, and all other federal, state or local claims arising out of or relating to CONTRACTOR's relationship or the termination of that relationship with DOORDASH.

Tang Decl. Ex. A, § XI.1 (emphasis added).  In his Complaint, Plaintiff claims he was misclassified as an independent contractor, and alleges causes of action for failure to reimburse business expenses, failure to pay minimum wage, willful misclassification, failure to provide pay statements, and unlawful and unfair business practices.  All of these claims fall squarely within the scope of the Arbitration Agreement.

Courts examining DoorDash's Arbitration Agreement have compelled arbitration of claims based on plaintiffs' independent-contractor status and all claims for damages.  *Magana*, 343 F. Supp.

3d at 899–900; *Farran* (Lipshutz Decl. Ex. A); *Marko* (Lipshutz Decl. Ex. D);  *Edwards*, 2017 WL 5514302, at *13; *Edwards*, 2016 WL 7852532, at *14.  That same result should follow here.

## C.        The Arbitration Class Action Waiver Is Valid And Enforceable

As noted above, under the delegation clause in the Arbitration Agreement, the parties agreed that the Court would decide the question of the enforceability of the Arbitration Class Action Waiver. Tang Decl. Ex. A, § XI.3.  It is now well settled that class-action waivers in arbitration agreements governed by the FAA are valid and enforceable.  In *Magana*, for example, this Court recognized the ICA's class action waiver and compelled the plaintiff to arbitration on an individual basis.  343 F. Supp. 3d at 901.  So did the *Farran* court.  Lipshutz Decl. Ex. A, at 2 ("Plaintiff does not … challenge the class action waivers…. The Court notes that these waivers are permitted under the FAA.").  The *Marko* court likewise enforced DoorDash's class-action waiver, holding that the plaintiffs in that case "shall arbitrate their independent contractor status and claims for damages on an individual basis, rather than on a class basis."  Lipshutz Decl. Ex. D, at 2.

The Supreme Court has held that the "primary purpose" of the FAA is "ensuring that private agreements to arbitrate are enforced ***according to their terms***."  *Volt Info. Scis. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) (emphasis added); *see also Mastrobuono*, 514 U.S. at 53–54 (enforcement of arbitration agreements "according to their terms" is the "central purpose" of the FAA); *Concepcion*, 563 U.S. at 344 (same).  Most recently, the Supreme Court held that this instruction by Congress to enforce arbitration agreements according to their terms "include[s] terms providing for individualized proceedings." *Epic Sys.*, 138 S. Ct. at 1619.

The Arbitration Class Action Waiver bars Plaintiff's class-action, FLSA collective-action, and PAGA representative-action claims.  Tang Decl. Ex. A, § XI.3 (parties agreed to individualized arbitration and waived "class, collective, and representative" actions).

First, the Class Action Waiver specifically prohibits class actions.  *Id.*  The Supreme Court has repeatedly upheld similar class-action waivers.  In *Epic Systems*, the Supreme Court held that class-action waivers in arbitration agreements governed by the FAA are enforceable and rejected the argument that class-action waivers are unenforceable under the National Labor Relations Act ("NLRA").  138 S. Ct. at 1619.  The Supreme Court has upheld class-action waivers in arbitration

agreements in several other cases.  In *Concepcion*, the Court held that the FAA preempted the California Supreme Court's rule restricting enforcement of class action waivers because it interfered with the fundamental attributes of arbitration and created a scheme inconsistent with the FAA.  563 U.S. at 352.[5]  Two years later, in *American Express*, the Supreme Court enforced a class-action waiver in an arbitration agreement, noting that courts "must rigorously enforce" arbitration agreements according to their terms, including terms that "specify with whom [the parties] choose to arbitrate their disputes."  570 U.S. at 233.

Second, FLSA collective actions are expressly barred.  Tang Decl. Ex. A, § XI.3.  The Ninth Circuit has long enforced contractual arbitration of FLSA claims.  *See Horenstein v. Mortg. Mkt., Inc.*, 9 F. App'x 618, 619 (9th Cir. 2001) ("[T]here is nothing in the text … [or] in the legislative history[] indicating that Congress intended to preclude arbitration of FLSA claims.").  If there were any doubt, several courts have recognized that *Epic Systems* compels the enforcement of such FLSA collective-action waivers.  *Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 296 (6th Cir. 2018) ("[B]ecause the FLSA does not 'clearly and manifestly' make arbitration agreements unenforceable, we hold that it does not displace the Arbitration Act's requirement that we enforce the employees' agreements as written.");  *Silva v. Darden Restaurants, Inc.*, 2018 WL 3533364, at *5 (C.D. Cal. July 20, 2018) ("In *Epic Systems* the Supreme Court held that prohibitions on class action are permissible in arbitration agreements, and so Plaintiff is unable to bring this [FLSA] collective action.");  *Heidrich v. PennyMac Fin. Servs. Inc.*, 2018 WL 3388458, at *3–4 (E.D. Cal. July 11, 2018) (compelling arbitration of FLSA claim);  *Fernando Gutierrez v. Jolt Delivery, LLC*, 2018 WL 6118581 (C.D. Cal. Aug. 7, 2018) (same).

Third, the Arbitration Class Action Waiver prohibits "representative" actions.  Tang Decl.

---

[5]  The Supreme Court also explained that class arbitration was inconsistent with the fundamental attributes of arbitration.  *Concepcion*, 563 U.S. at 346–48; *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019) ("Class arbitration is not only markedly different from the 'traditional individualized arbitration' contemplated by the FAA, it also undermines the most important benefits of that familiar form of arbitration.  The statute therefore requires more than ambiguity to ensure that the parties actually agreed to arbitrate on a classwide basis.") (citations omitted); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) ("a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so").  Here, the parties did not agree to class arbitration, and instead expressly prohibited arbitration of claims on a class, collective, or representative basis.  Tang Decl. Ex. A, § XI.3.

Ex. A, § XI.3.  PAGA actions are one type of representative actions.  *Miranda v. Anderson Enters., Inc.*, 241 Cal. App. 4th 196, 200 (2015).  As with class-action and collective-action waivers, such PAGA waivers should be enforced because the Supreme Court made clear in *Epic Systems* abrogated California's *Iskanian* rule, which prohibits pre-dispute waivers of the right to bring a PAGA action in any forum.  *Epic Sys.*, 138 S. Ct. at 1619 ("In the [FAA], Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings."); *see also Henry Schein*, 139 S. Ct. at 529 ("[A] court may not override the contract.").

Under binding Supreme Court precedent, the parties' agreement not to pursue class, collective, or representative claims is valid and must be enforced.  Plaintiff should be compelled to arbitrate his claims on an individual basis pursuant to the terms of the Arbitration Agreement, and these proceedings should be stayed pending the resolution of arbitration.  9 U.S.C. § 3; *Magana*, 343 F. Supp. 3d at 902 (applying the FAA's "plain language" and deciding to stay—rather than dismiss—case pending arbitration).

### D.    Plaintiff's PAGA Claim Must Be Stayed

As described above, Plaintiff's PAGA waiver should be enforced in favor of individual arbitration.  *See Epic Sys.*, 138 S. Ct. at 1619.  To the extent there is a dispute over the enforceability of Plaintiff's PAGA waiver (*compare Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 440–49 (9th Cir. 2015) (Smith, J., dissenting) (PAGA waivers should be enforceable), *with Correia v. NB Baker Elec., Inc.*, 32 Cal. App. 5th 602 (2019) (PAGA waivers not enforceable)), the Court should defer ruling on that part of DoorDash's motion and stay Plaintiff's PAGA claim pending completion of the arbitration.  That is the route the California Superior Court recently took in *Marciano v. DoorDash*.  Plaintiff's PAGA claim should be stayed for two independent reasons.

***First***, the FAA requires a stay while Plaintiff arbitrates his other claims.  *See* 9 U.S.C. § 3 (court "shall on application of one of the parties stay the trial of the action until such arbitration has been had"); *Whitworth v. SolarCity Corp.*, 336 F. Supp. 3d 1119, 1131 (N.D. Cal. 2018) (staying PAGA claim pending arbitration of individual claims); *Burrola v. U.S. Sec. Assocs., Inc.*, 2019 WL 480575, at *12 (S.D. Cal. Feb. 7, 2019) (same).

**Second**, several contractors have already sought to stand in the shoes of the State of California by filing PAGA claims for the same alleged Labor Code violations at issue here.  *See Marko v. DoorDash, Inc.* (L.A. Super. Ct. No. BC659481, filed Aug. 15, 2017); *Marciano v. DoorDash, Inc.* (S.F. Super. Ct. No. CGC-18-567869, filed July 5, 2018); *Brown v. DoorDash, Inc.* (L.A. Super. Ct. No. BC712973, filed July 6, 2018); *Lowe v. DoorDash, Inc.* (L.A. Super. Ct. No. BC715425, filed July 26, 2018).  The first of these cases, *Marko*, covers a much longer time period than this case and thus serves as a better vehicle to adjudicate a PAGA claim against DoorDash.  Since *Marko*, several courts adjudicating these cases have recognized the need to stay redundant, follow-on PAGA claims.

Last December, in *Marciano v. DoorDash, Inc.*, the San Francisco Superior Court stayed a PAGA case under similar circumstances.  Recognizing the "welter of litigation" against DoorDash on "the same central issue" of classification, Judge Ulmer stayed the case pending *Marko*.  Lipshutz Decl. Ex. C, at 1.  Judge Ulmer recognized that *Marko* "makes the same allegations seeking the same penalties for the same group of DoorDash delivery providers."  *Id.* (citing *Alakozai v. Chase Inv. Servs. Corp.*, 2012 WL 748584, at *6 (C.D. Cal. Mar. 1, 2012) (staying second-filed PAGA claim because "allowing the two matters to proceed simultaneously would unnecessarily risk inconsistent judgments and defeat efficiency.")).  Likewise, the Orange County Superior Court denied leave to add a PAGA claim in *Farran v. DoorDash, Inc.* because any such claim "would be stayed pending the outcome of the other [earlier-filed PAGA] actions" such as *Marko*.  Lipshutz Decl. Ex. A.  Likewise, in *Lowe v. DoorDash, Inc.*, the L.A. Superior Court recently stayed an overlapping PAGA claim.  Lipshutz Decl. Ex. G, at 1.

This case, too, must be stayed because it overlaps with four virtually identical PAGA actions that were filed before this case.

**Third**, Plaintiff's PAGA claim must be stayed while he arbitrates his claim for reimbursement of business expenses under Cal. Labor Code section 2802—a remedy Plaintiff seeks both individually and as part of his PAGA claim.  *Compare* Compl. ¶ 87 ("Plaintiff seeks to recover … expenses unlawfully deducted by Defendant."), *with* Compl. ¶ 117 (claiming entitlement to civil penalties for alleged Labor Code violations for which a civil penalty is not specifically provided, such as section 2802).  In *Esparza v. KS Industries, L.P.*, 13 Cal. App. 5th 1228 (2017), the California Court of Appeal

held that claims for individualized damages (such as unpaid wages under Cal. Labor Code section 558) do *not* constitute civil penalties under PAGA and are subject to arbitration.   The Ninth Circuit has agreed *Esparza*'s reasoning and reversed an order denying arbitration of such "victim-specific relief." *See Mandviwala v. Five Star Quality Care, Inc.*, 723 F. App'x 415, 417–18 (9th Cir. 2018).

Just like section 558, section 2802 provides that "[a]mounts recovered pursuant to this section shall be paid to the affected employee," *not* to the State.   Thus, just like section 558, Plaintiff's section 2802 claim seeks arbitrable "victim-specific relief" rather than civil penalties.   *Mandviwala* 723 F. App'x at 418; *see* Compl. ¶ 87.   Plaintiff's section 2802 claim must be compelled to arbitration while the remaining PAGA claim is stayed.[6]

### IV.  CONCLUSION

This Court should compel arbitration on an individual basis and stay this action.

Dated:  May 22, 2019                          GIBSON, DUNN & CRUTCHER LLP


                                              By:   */s/ Joshua Lipshutz*
                                                       Joshua Lipshutz


                                              Attorneys for Defendant DOORDASH, INC.

---

[6]  DoorDash reserves the right to argue that Plaintiff's PAGA claim should be dismissed because (1) it is not ripe because the statutory exhaustion period has not run and (2) Plaintiff waived his right to bring a PAGA claim under the terms of the 2019 ICA.

Gibson, Dunn &
Crutcher LLP